JOHN THOMAS PEARCE, ADMINISTRATOR OF THE ESTATE OF LISA COLLEEN PEARCE v. RONNIE EARL FLETCHER

No. 8410SC768

(Filed 7 May 1985)

**Rules of Civil Procedure § 59— denial of motion to set aside verdict as to damages —no abuse of discretion**

There was no abuse of discretion in the denial of plaintiff's motion to set aside the verdict as to damages and for a new trial where the jury had found that plaintiff's decedent had died as a result of defendant's negligence and awarded damages of $5,000. The evidence at trial was that decedent was nineteen years old; had stopped attending school during her sophomore year in high school; had subsequently "picked up two credits" but was not attending school at the time of her death; had worked periodically as a waitress but did not hold a regular job; was unemployed at the time of her death, lived at home, and was supported by her parents; had been hospitalized for drug overdose treatment six days prior to her death; a urine drug screen showed evidence of alcohol, cocaine, amphetamines and methamphetamines, and she had evidence of marks on her arms consistent with intravenous consumption of

cocaine; decedent and her parents had told her physician that she had had a drug problem for four or five years; and decedent's funeral expenses totalled $4,092.00. G.S. 28A-18-2(c), G.S. 1A-1, Rule 59.

ON certiorari to review judgment entered 26 September 1983 by *Battle, Judge*, in Superior Court, WAKE County. Heard in the Court of Appeals 13 March 1985.

Plaintiff brought this action in his administrative capacity seeking damages for the wrongful death of his decedent in an automobile accident. The jury found that decedent died as a result of defendant's negligence and that she was not contributorily negligent. It awarded damages in the sum of $5,000.00.

This Court allowed plaintiff's petition for a writ of certiorari to review the judgment. Plaintiff appeals and defendant cross appeals.

*Farris and Farris, P.A., by Thomas J. Farris and Robert A. Farris, Jr., for plaintiff appellant.*

*Merriman, Nicholls, Crampton, Dombalis & Aldridge, P.A., by Nicholas J. Dombalis, II, and W. Sidney Aldridge, for defendant appellee and cross appellant.*

WHICHARD, Judge.

Plaintiff's sole contention is that the court abused its discretion in denying his motion "to set aside the verdict as to damages as being against the evidence and the greater weight." In light of the standard for appellate review and of the evidence presented at trial, we find no abuse of discretion.

The standard for review of a trial court's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is virtually prohibitive of appellate intervention. Appellate review "is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E. 2d 599, 602 (1982). The trial court's discretion is " 'practically unlimited.' " *Id.*, 290 S.E. 2d at 603, quoting from *Settee v. Electric Ry.*, 170 N.C. 365, 367, 86 S.E. 1050, 1051 (1915). A "*discretionary* order pursuant to G.S. 1A-1, Rule 59 for or against a new trial upon *any* ground may be reversed on appeal

only in those exceptional cases where an abuse of discretion is clearly shown." *Worthington*, 305 N.C. at 484, 290 S.E. 2d at 603. "[A] manifest abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an abuse bearing that heavy burden of proof." *Id.* at 484-85, 290 S.E. 2d at 604. "[A]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Id.* at 487, 290 S.E. 2d at 605.

The "cold record" here reveals the following pertinent evidence:

On 20-21 June 1980 decedent and defendant spent most of the evening at a nightclub. A witness observed the defendant there drinking; she described his speech as "slurred" and his behavior as "rambunctious." Because of defendant's condition, the witness was concerned about decedent's plans to ride to the beach with him.

At approximately 3:00 a.m. decedent and defendant stopped by decedent's home. Decedent's mother observed defendant stumble at the foot of a bed and "surmised" that he had been drinking. She was concerned about decedent's leaving with defendant and she attempted to follow them.

Shortly after decedent and defendant departed from decedent's home the automobile owned and operated by defendant overturned. Decedent died from injuries sustained in the accident. When the investigating officer arrived at the scene, defendant had a strong odor of alcohol on his breath.

Decedent was nineteen years old at the time of her death. She had stopped attending school during her sophomore year in high school. She subsequently "picked up two credits" in summer school but was not attending school at the time of her death. She worked periodically as a waitress but did not hold a regular job and was unemployed at the time of her death. She lived at home and her parents supported her.

Six days before decedent's death she was hospitalized for drug overdose treatment. A urine drug screen showed evidence of alcohol, cocaine, amphetamines and methamphetamines. She had evidence of marks on her arms which were consistent with in-

travenous consumption of cocaine. She told her treating physician that she had been "using various types of drugs both injectable and orally and had been smoking marijuana approximately four or five years." Her parents told the physician that decedent "had been somewhat of a problem for four to five years with drug usage and alcohol."

Decedent's funeral bill totalled $4,092.00.

The evidence regarding decedent's low level of educational attainment, absence of regular employment, status of dependency, and history of alcohol and drug abuse was clearly relevant to a determination of her "present monetary value . . . to the persons entitled to receive the damages recovered." G.S. 28A-18-2(c). The jury could conclude that these negative factors offset, to the extent found, what decedent's present monetary value would have been in their absence. Our Supreme Court noted in *Worthington* that "trial judges . . . have traditionally exercised their discretionary power to grant a new trial in civil cases quite sparingly in proper deference to the finality and sanctity of the jury's findings." *Worthington*, 305 N.C. at 487, 290 S.E. 2d at 605. In light of the evidence here, we cannot conclude that the trial court's decision to defer to the finality and sanctity of the jury's findings was a manifest abuse of discretion or probably amounted to a substantial miscarriage of justice. We thus affirm the ruling.

At oral argument counsel for defendant stipulated to the dismissal of defendant's cross appeal in the event we affirmed in plaintiff's appeal. Accordingly, defendant's cross appeal is dismissed.

In plaintiff's appeal, affirmed.

In defendant's cross appeal, dismissed.

Judges JOHNSON and EAGLES concur.